UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| Claude R.,[1] | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 25-11975-JCB |
| FRANK BISIGNANO,<br>Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REVERSE AND REMAND
AND DEFENDANT'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION
[Docket Nos. 10, 18]

May 4, 2026

Boal, M.J.

This is an action for judicial review of a final decision by Frank Bisignano, the

Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's

application for Disability Insurance Benefits ("DIB"). Plaintiff asserts that the January 29, 2025,

decision of an administrative law judge ("ALJ") is in error and moves to reverse and remand the

decision for further proceedings. Docket No. 10. The Commissioner, in turn, has moved for an

order affirming his decision. Docket No. 18. For the following reasons, this Court denies the

Plaintiff's motion to reverse and remand and grants the Commissioner's motion to affirm.[2]

---

[1] Plaintiff's name is partially redacted in accordance with Rule 5.2(c)(2)(B) of the Federal Rules
of Civil Procedure and the recommendation of the Committee on Court Administration and Case
Management of the Judicial Conference of the United States.
[2] On November 25, 2025, the parties consented to the jurisdiction of the undersigned for all
purposes. Docket No. 13.

I.    FACTS AND PROCEDURAL HISTORY

  A.    Procedural History

On February 16, 2023, Plaintiff applied for benefits under Title II of the Social Security Act ("SSA") alleging disability since January 1, 2020. (Administrative Record ("AR") 196). After his claim was denied initially and on reconsideration, on August 15, 2024, ALJ Francis Hurley held a telephonic hearing at which an impartial vocational expert and Plaintiff, represented by counsel, appeared and testified. (AR 36-73, 97-101, 104-107). On January 29, 2025, the ALJ found that Plaintiff was not disabled from the alleged onset date through December 31, 2023, the date last insured. (AR 20-31). The Appeals Council denied Plaintiff's request for review, (AR 1-3), making ALJ Hurley's determination the Commissioner's final decision for purposes of judicial review. See 42 U.S.C. § 405(g).

Plaintiff filed this action on July 11, 2025. Docket No. 1. On November 24, 2025, Plaintiff filed a motion to reverse and remand. Docket No. 10. The government filed a motion for an order affirming the Commissioner's decision on February 19, 2026. Docket No. 18.

  B.    Medical Evidence

  1.    Back Pain

On or around November 30, 2023, Plaintiff reported left-sided gluteal and low back pain for two to three weeks. (AR 853). Approximately two weeks prior, he experienced sudden onset lower back discomfort that radiated down his left leg into his posterior hamstring and calf. (Id.). He reported that the pain "stop[ped] him it his tracks," that it was difficult to get comfortable, and that he had to use a cane for ambulating. (Id.). Tylenol did not help. (Id.).

A December 5, 2023, MRI showed (1) left paracentral L5-S1 disc extrusion effacing the left greater than right subarticular zones with impingement of the left descending S1 nerve root

with suspected mild impingement of the right descending S1 nerve root, which contributed to moderate spinal canal stenosis at L5-S1; (2) additional moderate spinal canal stenosis at L3-4 and L4-5; (3) multilevel mild neural foraminal stenoses; (4) edema involving the bilateral L3 and L4 pedicles and L3-4 facets, likely degenerative related; and (5) marrow edema along the apposing right aspect of the L5 and S1 vertebral bodies, likely degenerative.  (AR 965).

Doctors recommended an epidural injection but Plaintiff was opposed to such treatment based on his fear of injections.  (AR 752, 813, 852).  He also declined physical therapy because he believed it would be too painful.  (AR 813, 851).

2.      Mental Health Conditions

Plaintiff has been diagnosed with major depressive disorder, borderline personality disorder, post traumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD).  (See AR 1237).  He has suffered from suicidal ideation and substance abuse.  (Id.).  Since September of 2022, Plaintiff has been undergoing weekly psychotherapy and medication management with Jason Thoman, Ph.D.  (AR 1237-1238).

An intake on September 16, 2022, notes that Plaintiff's anxiety was not currently controlled as he was easily overwhelmed, had excessive generalized worry, catastrophic thinking, ruminations, muscle tension, autonomic symptoms, and could not deal with chaos.  (AR 575).  He reported no current episode of depression and that his ADHD was somewhat controlled with current regimen, but breakthrough symptoms included disorganization, difficulty completing tasks, and scattered thoughts.  (Id.).

In October 2022, Plaintiff reported that his ADHD greatly impacted his life.  (AR 547). He also reported that he had difficulty staying focused on tasks.  (Id.).  Plaintiff had a history of using amphetamines, opiates, cocaine, hallucinogens, cannabis, and alcohol for over thirty years

but denied current use.  (AR 548).

On November 10, 2022, Plaintiff reported feeling much better.  (AR 653).  Increasing Zoloft had been without adverse drug reactions; outbursts had improved significantly, depression had improved, and sleep was better.  (Id.).  Plaintiff also reported minimal thoughts of death. (Id.).

On January 3, 2023, Plaintiff reported that his anxiety was manageable.  He denied any recent suicidal ideation.  (AR 617).  He also denied any side effects from medications other than vivid dreams.  (Id.).

Plaintiff was noted to be dysregulated on January 19 and 26, 2023.  (AR 604, 608).  On February 2, 2023, he appeared better regulated and calm; reported that his doctor had prescribed something to help keep him stabilized and focused.  (AR 600).  On February 23, 2023, Plaintiff reported that his mood regulation had dramatically improved and he was able to stay focused. (AR 591).  Plaintiff was again dysregulated and anxious on March 2, 2023.  (AR 588).

On November 3, 2023, Plaintiff was seen at Massachusetts General Hospital for a ketamine clinic consult for treatment-resistant depression.  (AR 1051).  He reported feeling depressed for the past 30 years, with a recent worsening six years prior.  (Id.)  His symptoms included change in appetite or weight, change in psychomotor activity, change in sleep, depressed mood, loss of energy, loss of interest/pleasure, thoughts about death or suicide, thoughts of worthlessness or guilt, and trouble concentrating.  (Id.).  Plaintiff also described symptoms of anxiety disorder, OCD, and PTSD, but reported that depression was the primary issue.  (Id.).  Dr. Kritzer-Cheren found that Plaintiff was a good candidate for ketamine treatment.  (AR 1056). Among other things, Dr. Kritzer-Cheren noted that Plaintiff had no recent issues with substance abuse or alcohol misuse disorders.  (Id.).

Plaintiff received ketamine treatment on many occasions, and reported that the treatment was beneficial.  (AR 1028, 1031, 1034, 1037, 1040, 1047, 1048).  Though the benefits of treatment were temporary, Plaintiff felt like he was making "more healthy" decisions.  (AR 1028).  However, Plaintiff was still experiencing some suicidal ideation despite treatment.  (AR 1031, 1034).

Plaintiff takes multiple medications for his conditions, including Zoloft, Prazosin, Trazodone, Vistaril, Klonopin, Wellbutrin XL, Valium, and Evekeo, in addition to ongoing Ketamine therapy.  (AR 1237).

C.    Opinion Evidence

On August 2, 2024, Dr. Thoman filled out a questionnaire noting that Plaintiff had extreme limitations in the following areas of mental functioning: concentration, persistence, or maintaining pace, and adapting or managing oneself.  (AR 1223).  Dr. Thoman also filled out a Mental Residual Functional Capacity Form opining that Plaintiff has "Category IV" limitations (precludes performance for 15% or more of an 8-hour workday) on his ability to perform activities within a schedule, maintain regular attendance, and be punctual and within customary tolerances; to sustain an ordinary routine without special supervision; to complete a normal workday and work week without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.  (AR 1225).  He assessed Category III limitations (precludes performance for 10% or more of an 8-hour workday) on Plaintiff's ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; to respond appropriately to charges in work setting; and to travel in unfamiliar places or use public transportation.  (AR 1225-1226).  In addition, Dr. Thoman opined that Plaintiff would be likely to miss more than three days of work per month.  (AR 1227).

DDS consultants opined that Plaintiff had moderate deficits in the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to complete a normal workday and workweek without interruptions form psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; and the ability to accept instructions and respond appropriately to criticism from supervisors.  (AR 79-80, 92-93).

D.    Education And Occupational History

Plaintiff went to school in Germany, attaining the equivalent of an associate's degree of liberal arts.  (AR 44).  He had past relevant work as a salesperson.  (AR 68).

E.    Hearing Testimony

Plaintiff was 46 years old at the time of the hearing.  (AR 44).  He testified that he last used non-prescription drugs in June 2023.  (AR 52).  He feels like his mental health worsened after he became sober.  (AR 53).  Plaintiff explained that he suffers from severe mood dysregulation where he emotionally spirals out of control and gets so emotional that he starts crying.  (AR 53).  He also has depressive episodes where he thinks about ending his life.  (AR 55).  He has had many suicide attempts.  (AR 53).

Plaintiff has difficulty sleeping.  (AR 57).  He goes to bed as early as 12:00 a.m. or as late as 3:00 a.m. but sometimes cannot sleep at all.  (AR 59).  He wakes up at 6:00 or 7:00 a.m. and tries to get stuff organized in his house, "because it's such a mess."  (AR 57).  He is "in a constant cycle of trying to do something and never getting anything done."  (Id.).  In the afternoons, he tries to play with his dog in the backyard.  (AR 58).

Plaintiff goes grocery shopping but does not cook regularly.  (AR 57).  He eats things like

6

yogurt or microwaved meals.  (AR 57-58).  He can drive short distances but if he drives too long, his back starts hurting.  (AR 58).

Plaintiff's back pain has not responded to Tylenol or ibuprofen.  (AR 60-61).  Sometimes he cannot walk and has difficulty sitting.  (AR 62).  He declined injection treatment because he is phobic of needles.  (AR 60-61).  Plaintiff can lift maybe a gallon of milk.  (AR 62).

Plaintiff takes several medications.  The antidepressants have not been effective.  (AR 55). The amphetamine that he is being prescribed is effective because he does not have to use crystal meth anymore.  (Id.).  The ketamine treatment has somewhat improved his mental health.  (Id.). Plaintiff's anxiety medication makes him extremely tired and drowsy and he is unable to drive. (AR 59).  His HIV medication gives him diarrhea and stomach cramps.  (Id.)

Vocational Expert Zach Fosberg testified that a person with Plaintiff's residual functional capacity as found by the ALJ would be able to perform the jobs of price marker, routing clerk, or assembler, which existed in significant numbers in the national economy.  (AR 70).

## II.    STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. See 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (citations omitted). The Supreme Court has defined substantial evidence as "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citation omitted). The ALJ's decision is "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). However, if a court reverses the Commissioner's decision but there is no clear entitlement to benefits on the basis of the record before the court, the court must remand for additional proceedings. Seavey v. Barnhart, 276 F.3d 1, 11-12 (1st Cir. 2001) ("When an agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its action, the reviewing court should ordinarily remand the case to the agency.") (citation omitted). In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

III.    DISCUSSION

A.    Disability Standard And The Commissioner's Decision

The Social Security Act (the "Act") defines disability, in part, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is considered disabled under the Act

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for her, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). See generally Bowen v. Yuckert, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by

the First Circuit as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.

> Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits his or her physical or mental capacity to perform basic work-related functions." If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.

> Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

> . . . .

> Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

The ALJ concluded, following the Commissioner's five-step sequential disability evaluation, that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff meets the insured status requirements of the SSA through December 31, 2023, and he had not performed substantial gainful activity since his alleged onset date of January 1, 2020. (AR 22).

At step two, the ALJ found that Plaintiff had the following severe impairments: depressive disorder, anxiety disorder, personality disorder, PTSD, substance addiction disorder, lumbar degenerative disc disease/left paracentral disc extrusion with moderate canal stenosis at L3-4 and L5-S1. (AR 23). The ALJ also found that the Plaintiff had two nonsevere impairments: human immunodeficiency virus (HIV) and ADHD. (Id.).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, and 404.1526). (AR 23).

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand/walk for up to 6 hours in an 8-hour day; sit for up to 6 hours in an 8-hour day; occasionally climb ramps and stairs but never ladders, ropes, or scaffolds; occasionally balance, stoop, kneel crouch, and crawl.  (AR 25).  The ALJ also found that the Plaintiff is able to maintain attention, concentration, persistence, and pace on simple tasks for 2-hour periods over an 8-hour workday and 40-hour workweek with customary breaks; no contact or interaction with the general public; able to tolerate occasional contact and interaction with co-workers and supervisors; no tandem, team, or group tasks; able to adapt to occasional simple minor changes in work settings and routines; able to be aware of ordinary hazards; and can travel independently.  (AR 25).

At step five, the ALJ concluded that Plaintiff was not disabled because he could perform jobs existing in significant numbers in the national economy. (AR 29-30).

B.      Plaintiff's Challenges To The ALJ's Decision

Plaintiff alleges that the ALJ ignored evidence.  Docket No. 10-1 at 10-12.  First, he argues that the ALJ did not distinguish between PTSD and complex PTSD.  Id. at 11.  Second, he argues that the ALJ did not address the impacts of medication side effects.  Id. Next, he argues that, contrary to the ALJ's decision, Plaintiff's ADHD is not under control.  Id. at 11-12.  Finally, he argues that the ALJ ignored the impact of Plaintiff's husband being away for work for long periods of time.  Id. at 12.

Plaintiff also argues that the ALJ misapplied the law regarding the evaluation of Plaintiff's prior drug use and his pain.  Id. at 12-16.  For the following reasons, this Court finds that the ALJ's decision is supported by substantial evidence.

   1.   Plaintiff's PTSD

The ALJ noted that Plaintiff suffers from PTSD.  According to Plaintiff, however, the ALJ did not address that Plaintiff suffers from "complex PTSD, which is not the same, and which . . . requires a different evaluation regarding disability." Id. at 11.  Plaintiff, however, does not explain what any purported differences are between the two or cite to any evidence or legal authority to support this argument.  It appears that the ALJ's analysis was based on Plaintiff's symptoms and evidence of mental deficits rather than any labels for Plaintiff's conditions.  See AR 26-29.  Without more, Plaintiff has not shown an error in this respect requiring remand.

   2.   Medication Side Effects

Plaintiff also argues that the ALJ did not address that he suffers side effects from his medications.  Docket No. 10-1 at 11.  Other than his own brief testimony, however, Plaintiff does not point to any evidence in the record about medication side effects.  See Short v. Astrue, 648 F.Supp.2d 1185, 1191 (C.D. Cal. 2009) ("Where there is no evidence other than the claimant's testimony about side effects, the ALJ's failure to address them is not error.") (citations omitted); Lacroix v. Barnhart, 352 F.Supp.2d 100, 115 (D. Mass. 2005) (There is no grounds for reversal where "there is no evidence in the record of [claimant] telling a physician about experiencing side effects from her medication. . .").  Indeed, there are at least two instances in the record of Plaintiff denying any side effects other than vivid dreams.  (AR 617, 644).

3.     ADHD

Next, the Plaintiff argues that, contrary to the ALJ's decision, there is evidence that the Plaintiff's ADHD is not under control.  Docket No. 10-1 at 11.  Specifically, the Plaintiff states that the ALJ's decision ignores evidence that his symptoms of ADHD are somewhat controlled but that there are still breakthrough symptoms, including disorganization, difficulty completing tasks, and scattered thoughts.  Id. at 11-12.  It appears, however, that the ALJ considered any potential deficits in concentration in his RFC determination in connection with Plaintiff's other mental health diagnoses.  See AR 23.  As such, Plaintiff has demonstrated no error in this respect.

4.     Plaintiff's Husband's Unavailability

Plaintiff argues that the ALJ ignored the impact of his husband being away for work for long periods of time, which is a fact included in Plaintiff's medical records.  Docket No. 10-1 at 12.  Plaintiff, however, has failed to cite to any authority that this is a factor the ALJ was required to consider in the determination of disability.

5.     Plaintiff's Prior Drug Use

In addition, Plaintiff argues that the ALJ misapplied the law regarding the evaluation of Plaintiff's prior drug use.  Docket No. 10-1 at 12.  Plaintiff states that the ALJ did not address whether Plaintiff would have been disabled even with the use of non-prescribed drugs.  Id.  In addition, the ALJ's references to non-prescription drug use indicated that Plaintiff's drug use was current, but the record shows that his drug use was in the past.  Id.  Plaintiff misunderstands the law regarding drug use.

Under the Social Security Act, disability benefits are disallowed if it is found that the claimant's alcoholism or drug addiction is a "material contributing factor to the disability

determination."  42 U.S.C. § 423(d)(2)(C).  "[I]f a claimant is determined to be disabled and there is medical evidence of drug or alcohol abuse, then the ALJ 'must go one step further' and make a finding regarding the materiality of the drug or alcohol abuse to the finding of disability." Benelli v. Comm'r of Social Sec., No. 14-10785-MBB, 2015 WL 3441992, at *22 (D. Mass. May 28, 2025) (citing Brown v. Apfel, 71 F.Supp.2d 28, 35 (D.R.I. 1999)).  "In determining whether or not an individual's substance abuse is material to the determination of disability, the 'key factor' is if an individual would still be found to be disabled if she 'stopped using drugs or alcohol.'"  Id. (citing 20 C.F.R. §§ 404.1535(b)(1) & 416.935(b)(1); Brown, 71 F.Supp.2d at 35). Thus, before a materiality determination must be made, the ALJ must find that the claimant is disabled considering all impairments, including alcohol or drug use.  See SSR 13-2p, 2013 WL 621536, at *4 (Feb. 20, 2013).

Here, the ALJ found that Plaintiff was not disabled.  Therefore, there was no requirement to make a materiality determination.

6.      Evaluation Of Plaintiff's Back Pain

Finally, the Plaintiff argues that the ALJ did not consider appropriately his back pain in determining Plaintiff's RFC.  Docket No. 10-1 at 12-16.  In determining a claimant's RFC, an ALJ must consider a claimant's subjective allegations of functional limitations, but he is not required to take those allegations at face value and may reject them where they are unsupported by the medical evidence, treatment history, and activities of daily living. See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 194-95 (1st Cir. 1987); Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 22-23 (1st Cir. 1986); Winn v. Heckler, 762 F.2d 180, 181 (1st Cir. 1985); 20 C.F.R. § 404.1529; SSR 16-3P, 2017 WL 5180304. Specifically, the ALJ must consider the so-called "Avery factors," which are the claimant's daily activities, functional

13

restrictions, non-medical treatment, medications and side-effects, precipitating and aggravating factors, and the nature, location, onset, duration, frequency, radiation, and intensity of the symptoms. Avery, 797 F.3d at 28-29. An ALJ is not required to discuss each of the Avery factors in order to sufficiently support a credibility determination. See, e.g., Foley v. Astrue, No. 09-10864-RGS, 2010 U.S. Dist. LEXIS 60174, * 21 (D. Mass. June 17, 2010).

If an ALJ determines that a claimant's testimony regarding his symptoms is not credible, the ALJ "must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); see also Larlee v. Astrue, 694 F.Supp.2d 80, 85 (D. Mass. 2010). The determination or decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewers can assess how the [ALJ] evaluated the individual's symptoms." SSR 16-3P, 2017 WL 5180304. An ALJ's credibility determination is entitled to deference, especially when supported by specific findings. Frustaglia, 829 F.2d at 195; see Arrington v. Colvin, 216 F.Supp.3d 217, 236 (D. Mass. 2016) (citation omitted) ("It is the responsibility of the ALJ, and not the court, 'to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts of evidence.'").

An ALJ can disregard allegations of subjective symptoms, such as pain, if the allegations are unsubstantiated and the ALJ does not credit them. See Mills v. Apfel, 244 F.3d 1, 7 (1st Cir. 2001). "The Court cannot overturn that finding just because it might draw different inferences from the record." Langley v. Soc. Sec. Admin. Comm'r, No. 1:qq-cv-71-DBH, 2012 WL 379937, at *7 (D. Me. Feb. 3. 2012) (rep. & recommendation) (citing Ortiz v. Sec'y of Health and Human Servs., 955 F.2d at 769), adopted, 2012 WL 589658 (Feb. 22, 2012); see Foster v.

14

Colvin, No. 15-11841-DJC, 2016 WL 3360574, at *9 (D. Mass. June 16, 2016) ("[T]he Court must adhere to findings supported by substantial evidence even if the record arguably justifies a different conclusion.") (citing Whitzell v. Astrue, 792 F.Supp.2d 143, 148 (D. Mass. 2011)).

The ALJ addressed Plaintiff's allegations of disabling back pain and found that they were not consistent with the medical and other evidence of record. (AR 27-28). He noted that Plaintiff sought treatment for back pain in November 2023. (AR 27). At that time, a physical examination showed lumbar tenderness with positive straight leg raising on the left. (Id.). He otherwise exhibited no focal neurological deficit, and his gait was normal. (Id.). The ALJ also considered a December 2023 MRI, showing left paracentral L5-S1 disc extrusion with impingement of the left descending S1 nerve root and moderate spinal canal stenosis at L5-S1, moderate spinal canal stenosis at L3-4 and L4-5, and multilevel mild neuroforaminal stenoses. (AR 27-28).

In addition, the ALJ considered the Plaintiff's reports of ambulating with a cane. (AR 28). He noted that Plaintiff declined treatment with epidural steroid injections and did not start the recommended physical therapy because he believed it would be too painful for him. (Id.). In April 2024, Plaintiff ambulated with a cane but otherwise retained full (5/5) motor strength in the lower extremities and normal range of motion of the lower back. (Id.). The ALJ therefore concluded that while the record established that Plaintiff suffered from chronic lower back pain, Plaintiff retained generally intact neurologic function and that there was no evidence that his lower back pain would preclude light work with additional postural restrictions. (Id.) The ALJ's decision was sufficiently supported.

The Plaintiff takes issue with the ALJ's consideration of his refusal to consider epidural steroid injections and physical therapy. Docket No. 10-1 at 14. Plaintiff argues that the ALJ was

15

required to evaluate whether his refusal to undergo treatment was reasonable and he did not do so here.  Id. (citing to Schena v. Sec'y of Health and Human Servs., 635 F.2d 15, 19 (1st Cir. 1980)).  Schena, however, concerns the termination of disability benefits for a claimant's willful failure to follow prescribed treatment and is inapplicable to the present situation.

Here, the ALJ did not conclude that Plaintiff was not disabled due to his decision not to follow the recommended treatment.  Rather, he appears to have concluded that Plaintiff's decision not to follow recommended treatment was one factor that weighed against his credibility regarding his pain complaints.  "Where an applicant does not follow the prescribed medical advice which would remedy or reduce his impairments, such conduct is 'arguably inconsistent with his complaints of pain.'"  Torres-Gutierrez v. Sec. of Health, Education and Welfare, 572 F.2d 7, 8 (1st Cir. 1978); see also Sangel v. Astrue, 785 F.Supp.2d 757, 777 (N.D. Iowa 2011) (citation omitted) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility."); see also Oliveira v. Astrue, No. 10-10218-DPW, 2011 WL 3816521, at *7 (D. Mass. Aug. 26, 2011) (affirming ALJ's credibility determination based on claimant's refusal to undergo surgery, together with the record as a whole).

Ultimately, Plaintiff's challenge to the ALJ's decision inappropriately asks this Court to reweigh the evidence in a manner more favorable to him.  That this Court may not do.  See Rodriguez v. Sec. of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) ("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the [Commissioner], not for the doctors or for the courts."). The Plaintiff has not shown an error in the ALJ's evaluation of the record evidence or in his ultimate findings.  Accordingly, this Court finds that the ALJ's decision is supported by substantial evidence and must be affirmed.

IV.    ORDER

For the foregoing reasons, this Court denies the Plaintiff's motion to reverse and remand and grant the Commissioner's motion to affirm.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge